786 F.2d 370
 PHILLIPS PETROLEUM COMPANY, Phillips Oil Company,
Transcontinental Gas Pipe Line Corporation,
Interstate Natural Gas Association of
America, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Conoco, Inc., Intervenor.
 Nos. 84-1846, 84-2267, 84-2270, 84-2786, 84-2787, 85-1396,
85-1397, 85-1398 and 85-1399.
 United States Court of Appeals,
Tenth Circuit.
 March 10, 1986.
 
 Jennifer A. Cates, (Larry Pain, C.J. Roberts, with her on brief), Bartlesville, Okl., for petitioners, Phillips Petroleum Co. and Phillips Oil Co.
 John W. Ebert (Thomas F. Ryan, Jr. and Robert G. Hardy, with him on brief), of Andrews & Kurth, Washington, D.C., for petitioner, Transcontinental Gas Pipe Line Corp.
 John J. Cheatham, III, Washington, D.C., Vice President, Gen. Counsel and Secretary, and Edward B. Myers, for petitioner, Interstate Natural Gas Ass'n of America; R.V. Loftin, Jr., of counsel, Houston, Tex.
 Joshua Z. Rokach (Arlene Pianko Groner, Herome M. Feit, John N. Estes, III and William Satterfield, with him on briefs), Washington, D.C., for respondent, F.E.R.C.
 Before BARRETT and MOORE, Circuit Judges, and THEIS,* District Judge.
 BARRETT, Circuit Judge.
 
 
 1
 This case involves consolidated petitions to review four rules promulgated by the Federal Energy Regulatory Commission (FERC or Commission). The rules establish fees pursuant to the Independent Offices Appropriations Act (IOAA), 31 U.S.C. Sec. 483a, recodified, 31 U.S.C. Sec. 9701, which authorizes agencies to collect fees for services provided to identifiable beneficiaries and thereby make agencies "self-sustaining to the extent possible." These rules are FERC orders 360, 361, 394, and 395.
 
 FERC Order 360
 
 2
 First, we are asked to review FERC order 360, "Fees Applicable to Producer Matters Under the Natural Gas Act," accompanied by order 360-A, "Order Denying Rehearing and Clarifying the Final Rule," issued February 6, 1984, and April 20, 1984, respectively. A petition to review was filed in this court by Phillips Petroleum Company and Phillips Oil Company (Phillips) on June 18, 1984.
 
 
 3
 FERC order 360 establishes fees for the services and benefits the Commission provides to producers under the Natural Gas Act (NGA), 15 U.S.C. Secs. 717-717w. According to the Commission, the rule is authorized by the IOAA. Specifically, under order 360 the Commission established the following fee schedule for services and benefits provided to producers under the NGA:
 
 
 4
 (1) $800 for Commission review of applications for blanket certificates for small producers under section 7(c) of the NGA, filed in accordance with 18 C.F.R. Sec. 157.40(b);
 
 
 5
 (2) $1600 for Commission review of applications by producers for certificates of public convenience or necessity under Sec. 7(c) of the NGA filed in accordance with 18 C.F.R. part 157;
 
 
 6
 (3) $300 for a Commission review of changes in producer rates schedules under section 4 of the NGA, filed in accordance with 18 C.F.R. Sec. 154.94.
 
 FERC Order 361
 
 7
 Second, we are asked to review FERC order 361, "Fees Applicable to Natural Gas Pipeline Rate Matters," accompanied by order 361-A, "Order Denying Rehearing," issued February 6, 1984, and April 20, 1984, respectively. Transcontinental Gas Pipeline Corporation (Transco) filed its petition to review on June 19, 1984, in the United States Court of Appeals for the Fifth Circuit. Interstate Natural Gas Association of America (INGAA) filed its petition to review these orders in the United States Court of Appeals for the District of Columbia Circuit on June 19, 1984. The Transco and INGAA appeals were transferred to this court pursuant to 28 U.S.C. Sec. 2112(a) and consolidated with the petition to review FERC orders 360 and 360-A filed by Phillips on June 18, 1984.
 
 
 8
 FERC order 361 establishes fees for services and benefits provided to natural gas pipeline owners under the NGA and related authorities. The Commission also maintains this rule is authorized under the IOAA and established the following fees for pipeline rate matters:
 
 
 9
 (1) $2000 for Commission review of pipeline tariff filings for general changes in rates and for changes other than rates under section 4 or section 5 of the NGA, filed in accordance with 18 C.F.R. Sec. 154.63;
 
 
 10
 (2) $2300 for Commission review of pipeline tariff filings that tract certain changes and costs under section 4 and section 5 of the NGA, titled in accordance with the 18 C.F.R. Sec. 154.38 or pursuant to approved tariff provisions, orders of the Commission or settlement agreements with the Commission;
 
 
 11
 (3) direct billings for Commission review of petitions seeking advance Commission approval of rate treatment of research, development, and demonstration of expenditures filed in accordance with 18 C.F.R. Sec. 154.38(d)(5).
 
 FERC Order 394
 
 12
 Third, we are asked to review FERC order 394, "Fees Applicable to the Natural Gas Policy Act," accompanied by "Order Denying Rehearing," issued August 31, 1984, and October 31, 1984, respectively. The Phillips petition to review order 394 was filed in this court on December 27, 1984. INGAA's and Transco's petitions were filed in the United States Court of Appeals for the District of Columbia Circuit on December 28, 1984 and were transferred to this court pursuant to 28 U.S.C. Sec. 2112(a).
 
 
 13
 FERC order 394 establishes fees for services and benefits provided under the Natural Gas Policy Act (NGPA), 15 U.S.C. Secs. 3301-3432. Using the basic methodology for establishing fees with respect to services and benefits under orders 360 and 361, the Commission established the following fees under the IOAA:
 
 
 14
 (1) $6000 to apply for adjustments under section 502(c) of the NGPA, including exemptions from incremental pricing under section 206(d);
 
 
 15
 (2) $25 for Commission review of a jurisdictional agency determination;
 
 
 16
 (3) $2000 to petition for approval for rates and charges for transportation of natural gas under 18 C.F.R. Sec. 284.123(b)(2);(4) $800 for initial or extension reports filed in accordance with 18 C.F.R. Secs. 284.106, 284.126, 284.148, and 284.163 for transactions authorized under Title 3 of the NGPA;
 
 
 17
 (5) $1200 for requests for interpretation of the NGPA by the office of the General Counsel.
 
 FERC Order 395
 
 18
 Fourth, we are asked to review FERC order 395, "General Activities Fees Rule," accompanied by "Order Denying Rehearing and Making Technical Corrections," issued on December 15, 1982, and October 31, 1984, respectively. On December 27, 1984, Phillips petitioned this court to review those orders and on December 28, 1984, INGAA and Transco individually petitioned the United States Court of Appeals for the District of Columbia Circuit to review the same orders. The petitions for review filed by INGAA and Transco were transferred to this court and consolidated with the Phillips appeal pursuant to 28 U.S.C. Sec. 2112(a).
 
 
 19
 FERC order 395 establishes fees pursuant to the IOAA applicable to "general activities" of the Commission. The methodology followed in promulgating this rule was the same as in orders 360, 361, and 394. The initial fees, subject to subsequent annual adjustments, are as follows:
 
 
 20
 (1) $4900 for a petition for issuance of a declaratory order other than one solely concerned with matters arising under Part I of the Federal Power Act;
 
 
 21
 (2) $100 for requests for interpretation from the Office of Chief Accountants;
 
 
 22
 (3) $3700 for a petition for review of a Department of Energy (DOE) denial of adjustment if the amount in controversy exceeds $30,000; $600 if the amount in controversy is $10,000 up to and including $29,999; and $100 if the amount in controversy is $0 up to and including $9,999;
 
 
 23
 (4) $2900 for review of DOE remedial order if the amount in controversy exceeds $30,000; $600 if the amount in controversy is $10,000, up to and including $20,999; and $100 if the amount in controversy is $0 up to and including $9,999; and
 
 
 24
 (5) $5.60 per quarter hour for professional employees, and $2.40 per quarter hour for clerical employees for search time performed while responding to Freedom of Information Act requests.
 
 
 25
 This court's jurisdiction to consider these petitions for review arises under section Sec. 717r(b) of the NGA, section 3416 of the NGPA, Rule 15 of the Federal Rules of Appellate Procedure and 28 U.S.C. Sec. 2112.
 
 
 26
 The issues raised in the petitions for review can be summarized as follows: (1) whether FERC correctly held that it had the legal authority under the IOAA to establish fees for various services it performs under the NGA and the NGPA; and (2) whether the Commission's procedures in establishing the fees constitute a lawful exercise of the Commission's authority.
 
 I. SCOPE OF REVIEW
 
 27
 The scope of our review of agency actions is generally defined by section 706 of the Administrative Procedure Act (APA). 5 U.S.C. Sec. 706. The scope of review under section 706 depends upon (1) whether the agency action is an adjudication or a formal rulemaking, in which case the standard of review is the substantial evidence standard, or (2) whether the agency action is an informal rulemaking, in which case the standard to be applied is the arbitrary and capricious standard. Compare 5 U.S.C. Sec. 706(2)(A) and (E).
 
 
 28
 The Supreme Court has held that the APA establishes the maximum procedural requirements which the courts may impose on agencies. While additional procedural requirements may be imposed by Congress or an agency, reviewing courts are generally not free to impose them. Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). Thus, the scope of our review is governed by the APA's standards unless we find supplementary authority to the contrary.
 
 
 29
 There is nothing in the NGA, the NGPA, or the IOAA to lead us to conclude that in promulgating these rules the Commission engaged in anything other than an informal rulemaking procedure. An "informal rule" is one promulgated pursuant to section 553 of the APA. Motor Vehicle Manufacturers Ass'n v. State Farm, 463 U.S. 29, 41, 103 S.Ct. 2856, 2865-66, 77 L.Ed.2d 443 (1983). Whereas none of these Acts define the scope of our review, "The Agency's action in promulgating such [rules] therefore may be set aside if found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. Sec. 706(2)(A)." Id. Contrary to the position advanced by some of the petitioners, the "substantial evidence" standard is not appropriate in reviewing informal rulemaking proceedings under the APA. Western Union Telegraph Co. v. FCC, 665 F.2d 1112, 1148 (D.C.Cir.1981).
 
 
 30
 We should also note that our review of these FERC orders involves at least one question of law: the Commission's legal authority to promulgate these rules. Section 706 of the APA requires that, "[t]o the extent necessary for decision and when presented, the reviewing court shall decide all relevant questions of law." 5 U.S.C. Sec. 706. While most courts accord some deference to an agency's determination of legal questions, the APA appears to require a de novo review of questions of law. Office of Communication of the United Church of Christ v. FCC, 707 F.2d 1413 (D.C.Cir.1983).
 
 II. STATUTORY AUTHORITY
 
 31
 In orders 360, 361, 394, and 395, the Commission relies upon the IOAA to establish fees for services and benefits it provides under the NGA or the NGPA. (R., Vol. I, p. 2; R., Vol. II, p. 1; R., Vol. III, p. 1; R., Vol. IV, p. 2.) The IOAA provides in part:
 
 
 32
 [A]ny work, service publication, report, document, benefit, privilege, authority, use, franchise, license, permit, certificate, registration or similar thing of value or utility performed, furnished, provided, granted, prepared, or issued by any Federal agency ... to or for any person ... shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation ... to prescribe therefor such fee, charge, or price, if any, as he shall determine, in the case none exists, or redetermine, in case of any existing one, to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts, and any amount so determined or redetermined shall be collected and paid into the Treasury as miscellaneous receipts....
 
 
 33
 31 U.S.C. Sec. 483a, recodified without substantive change, 31 U.S.C. Sec. 9701.
 
 
 34
 The principal interpretation of the IOAA is Bureau of the Budget Circular A-25 which states that a fee should be assessed against each identifiable recipient of a measurable unit or amount of Government service or property from which such recipient receives a special benefit. Specifically, Circular No. A-25 provides:
 
 
 35
 3. General Policy. A reasonable charge ... should be made to each identifiable recipient for a measurable unit or amount of Government service or property from which he derives a special benefit.
 
 
 36
 a. Special services.
 
 
 37
 (1) Where a service (or privilege) provides special benefits to an identifiable recipient above and beyond those which accrue to the public at large, a charge should be imposed to recover the full cost to the Federal Government of rendering that service. For example, a special benefit will be considered to accrue and a charge should be imposed when a Government-rendered service:
 
 
 38
 (a) Enables the beneficiary to obtain more immediate or substantial gains or values (which may or may not be measurable in monetary terms) than those which accrue to the general public (e.g., receiving a patent, crop insurance, or license to carry on a specific business ); or
 
 
 39
 (b) Provides business stability or assures public confidence in the business activity of the beneficiary (e.g., certificates of necessity and convenience for airline routes, or safety inspection of craft); or
 
 
 40
 (c) Is performed at the request of the recipient and is above and beyond the services regularly received by the same industry or group or of the general public (e.g., receiving a passport, visa, airman's certificate, or an inspection after regular duty hours).
 
 
 41
 Bureau of the Budget Circular No. A-25 (September 23, 1959) (emphasis added).
 
 
 42
 In National Cable Television Ass'n v. FCC, 415 U.S. 336, 342, 94 S.Ct. 1146, 1149-50, 39 L.Ed.2d 370 (1974), the Supreme Court reviewed the IOAA and determined that agencies had authority to charge fees to recipients of "special benefits," but that agencies could not tax such recipients. In a companion case, the Court adopted as "the proper construction of the Act" Budget Circular No. A-25. Federal Power Commission v. New England Power Co., 415 U.S. 345, 351, 94 S.Ct. 1151, 1155, 39 L.Ed.2d 383 (1974).
 
 
 43
 The parties agree that the IOAA and Circular A-25 set forth the relevant authority of the Commission to promulgate these rules. In addition, the parties agree that under the established precedent which construes the IOAA and Circular A-25, the transfer of a "special benefit" to an identifiable recipient is a prerequisite for establishing a lawful fee by an agency. While they rely on identical authority, the parties differ regarding the meaning of the term "special benefits." In addition, they disagree on the effect that public versus private "benefits" have on an agency's authority to assess fees.
 
 
 44
 Petitioners argue that the NGA and the NGPA were enacted with the primary purpose of benefiting the public. They argue that the principal purpose of the NGA and the NGPA is to control the profits of enterprises that are perceived to have monopoly control over certain natural resources. The focus of the Acts is upon reducing rates, a function benefiting the public, not the regulated entity. Any "special benefits" conferred by the FERC under the NGA or the NGPA accrue to the general public not to the regulated industries. Therefore under the IOAA the cost of providing "special benefits" to the public cannot be assessed against and borne by petitioners. The Commission's response to this argument is that as long as a "special benefit" runs to the regulated entity, an agency may assess a fee, even if the public also benefits from the regulation.
 
 
 45
 Both the Commission and petitioners rely on National Cable Television Ass'n v. FCC, 554 F.2d 1094 (D.C.Cir.1976) (National Cable II), Electronic Industries Ass'n v. FCC, 554 F.2d 1109 (D.C.Cir.1976), Mississippi Power & Light Co. v. NRC, 601 F.2d 223 (5th Cir.1979), cert. denied, 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980), and our decision in Nevada Power Co. v. Watt, 711 F.2d 913 (10th Cir.1983) to support their positions. We believe these cases which interpret and apply the IOAA are dispositive.
 
 
 46
 In National Cable II, petitioners there challenged the Federal Communication Commission's (FCC) assessment of an annual authorization fee to recover the costs associated with the processing of applications and tariff filings. After noting that under the rules of the FCC "[n]o cable television system shall commence operations or add ... to existing operations unless it receives a certificate of compliance from the Commission," 554 F.2d at 1101 (quoting 47 C.F.R. Sec. 76.11(a) (1975)) (emphasis in original), the court held: "The issuance of a certificate of compliance under 47 C.F.R. Sec. 76.11(a) is a service rendered by the FCC to the cable operators, and the agency is fully justified in seeking reimbursement of any expenses incurred in performing that service." Id. Under the court's reasoning, the FCC "service" is to permit the cable companies to operate at all.
 
 
 47
 In Electronic Industries Ass'n v. FCC, 554 F.2d 1109, (D.C.Cir.1976), the companion case to National Cable II, the court elaborated upon the types of services provided to regulated entities for which an agency may assess a fee under the IOAA. While "service" is defined in Budget Circular No. A-25, supra, to include a "license to carry on a specific business" or "assuring public confidence in the business activity of the beneficiary," the court expanded "service" to include assisting beneficiaries in complying with a statute:
 
 
 48
 [An agency] is entitled to charge for services which assist a person in complying with his statutory duties. Such services create an independent private benefit.... Although [the statute at issue] was enacted in order to protect the public against excessive or unreasonably discriminating or preferential charges, that result is only an incidental benefit from the service which is rendered by the agency, i.e., assisting the carriers in complying with the statute.
 
 
 49
 Id. at 1115.
 
 
 50
 In Mississippi Power & Light Co. v. NRC, 601 F.2d 223 (5th Cir.1979), the court considered the precise issue raised by the petitioners in the case at bar. Petitioners in Mississippi Power challenged the NRC's entire fee schedule which is designed to recover the costs for processing applications, permits, and licenses as well as the costs arising from health and safety inspections and statutorily mandated environmental and anti-trust reviews. Petitioners argued that the NRC was without legal authority to assess any fee against an applicant because all of the NRC's activities furthered the "public interest" and therefore any charge assessed must necessarily be a tax.
 
 
 51
 After reviewing the legal precedents with respect to the IOAA, the court reasoned as follows: "A license from the NRC is an absolute prerequisite to operating a nuclear facility, and as such, is a benefit 'not shared by other members of society.' ... [T]o accept petitioners' argument would mean that no Federal agency could assess any fees, since all public agencies are constituted in the public interest." Id. at 229.
 
 
 52
 Finally, in Nevada Power Co. v. Watt, 711 F.2d 913 (10th Cir.1983) we considered the validity of a fee assessed by the Department of the Interior to cover the cost of an environmental impact statement (EIS) when an application for right of way under the Federal Land Policy Management Act (FLPMA) triggers the National Environmental Policy Act (NEPA). In response to the utilities' argument that an EIS inures solely to the benefit of the general public, we held that because the EIS is a necessary prerequisite to the receipt by the applicant of a special benefit--the grant of a right of way--"Interior is not restrained by the doctrine laid out in National Cable and New England Power Co. from charging the full cost of such EIS to the applicant." Id. at 930.
 
 
 53
 The analysis in these cases disposes of petitioners' argument that the fees established by FERC are not authorized under the IOAA as a matter of law because the agency's services benefit the public. As these cases make clear, where an agency performs a service from which a regulated entity derives a "special benefit," it may charge a fee, even though the public also benefits. Moreover, the term "special benefit" is broadly defined to include even assisting regulated entities in complying with regulatory statutes. Electronic Industries Ass'n, 554 F.2d at 1115.
 
 
 54
 We hold the petitioners' "public benefit theory" does not preclude the FERC from assessing fees as a matter of law if "special benefits" to a regulated entity can be reasonably inferred from an agency's regulatory scheme. "Special benefits" are broadly defined and as long as they are identified the regulatory agency is authorized to assess fees for its costs in conferring these "benefits." As our discussion below will show, the FERC rules under review impose fees for services to the petitioners which under the FERC regulatory scheme will enable the petitioners to engage in their respective activities or to comply with the NGA or the NGPA. Thus, we cannot hold as a matter of law that FERC was without authority to establish fees for its services in promulgating orders 360, 361, 394 and 395.
 
 III. RULEMAKING
 
 55
 Petitioners contend that the Commission acted improperly in several respects in promulgating the rules under review. We reiterate that we must uphold the Commission's action unless we find they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. Sec. 706(2)(A). "Regulations must be set aside if they are arbitrary, capricious or an abuse of discretion, 5 U.S.C. Sec. 706(2)(A), or if the agency has acted in excess of its statutory jurisdiction, 5 U.S.C. Sec. 706(2)(C). Deference is accorded administrative regulations. Conway v. Watt, 717 F.2d (10th Cir. [1983]. This court has frequently applied the "rational basis" standard to agency actions." Wyoming Hospital Ass'n v. Harris, 727 F.2d 936, 938-39 (10th Cir.1984). "A reviewing court may not substitute its judgment for an agency's and must affirm an agency's decision if a rational basis for it is presented." KCST-TV, Inc. v. FCC, 699 F.2d 1185, 1191 (D.C.Cir.1983) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971)).
 
 
 56
 Petitioners contend that even if we deem the fees to be authorized under the IOAA, which we do, the Commission has failed to include evidence in the record to demonstrate that the Commission's services confer a benefit on the regulated entities. Our review of the record reveals that the Commission did identify the benefits it confers on fee payors when it promulagated FERC orders 360, 361, 394, and 395. (R., Vol. I., pp. 4-8; R., Vol. II, pp. 7-12; R., Vol. III, pp. 6-10; R., Vol. IV, pp. 4-8.) For example, in its Notice of Proposed Rulemaking for FERC order 360, the Commission noted that "[a] blanket small producer certificate under section 7 (c) of the NGA benefits the applicant by exempting the applicant from certain otherwise applicable filing requirements." (R., Vol. I, p. 6.)
 
 
 57
 Another benefit the Commission noted concerned the issuance of a Certificate of Public Convenience and Necessity: "A Certificate of Public Convenience and Necessity under Section 7(c) benefits the applicant by allowing the applicant to engage in the business of sale or resale of natural gas. Without a Certificate, a producer would be precluded by Section 7(c) of the NGA from selling natural gas for resale in the interstate market." Id. The Commission also stated that it was not including certain costs in determining its fees. "As mentioned above, the Commission is not proposing in this rulemaking to charge fees for other actions it takes relating to gas producers under the NGA. These actions include preliminary and formal enforcement of investigations, settlement and administrative litigation, news releases, litigation in the courts, and rulemakings." (R., Vol. I, p. 7.)
 
 
 58
 For each of the rules we are asked to review, the Commission identifies the benefits which it believes are conferred upon the regulated entity applying for the Commission's services. It appears from the record before us that the Commission gave careful consideration to the requirements of the IOAA. We hold that the Commission did not act arbitrarily or capriciously in demonstrating that its services confer a benefit on fee payors.
 
 
 59
 Petitioners next contend that the Commission is required to apportion the fees between regulated industries and the public; in other words, the fees must reflect the value of the service conferred on the regulated entities and the Commission must exclude from the fees expenses incurred to serve an independent public interest. We considered this very argument in Nevada Power, supra. Relying on the analysis in Mississippi Power, supra, we held that under the IOAA and controlling precedents, the full costs of providing a service to regulated entities can be assessed regardless of the benefit flowing to the public.
 
 
 60
 The utilities argue that National Cable and New England Power Co. support their EIS argument, reasoning that an EIS primarily benefits the public and thus cannot be charged to an applicant. Interior disagrees, citing Mississippi Power.... In Mississippi Power, the Fifth Circuit examined both National Cable and New England Power Co., and then held that the NRC could "recover the full cost of providing a service to an identifiable beneficiary, regardless of the incidental public benefits flowing from the provision of that service." ... Accordingly, the court held that the Commission could recover from a license applicant the full costs of conducting environmental reviews required under NEPA "because they are a prerequisite to the issuance of a license.... The Commission must conduct these reviews before it can issue a license to an applicant; it is a necessary part of the cost of providing a special benefit to the licensee. In other words, it is 'incident to a voluntary act.' " ... It mattered not that there was an "obvious public benefit flowing from the preparation of these environmental reviews."
 
 
 61
 711 F.2d at 930 (citations omitted).
 
 
 62
 We again reject the argument that an agency may not assess the full cost of its services against a regulated entity. We uphold the amount of the Commission's fees in FERC orders 360, 361, 394, and 395.
 
 
 63
 Petitioners next contend that the Commission's rules unlawfully prohibit them from recovering the cost of these fees from the consumers by increasing statutory price ceilings. Petitioners argue that by refusing to permit cost recovery, the Commission has violated the "just and reasonable" standard of the NGA and has unlawfully reduced prices established under the NGPA. Petitioners maintain that they are entitled to recover prudently incurred costs necessary to perform price regulated services.
 
 
 64
 Under 15 U.S.C. Secs. 3314(b)(2), 3316(c), and 3320(a)(2) the petitioners argue that they are entitled to have the ceiling prices increased to a just and reasonable level taking into consideration the Commission's new fees. The language of the NGPA makes it clear, however, that an increase in ceiling prices, for whatever reasons, is wholly within the discretion of the Commission. The Commission considered the petitioners' contention and rejected their arguments. (R., Vol. I, p. 305.) Under the circumstances, we hold that the Commission's decision refusing to permit the petitioners to pass the cost of the fees onto their consumers is not arbitrary, capricious or contrary to law.
 
 
 65
 Finally, petitioners contend that the "direct billing procedure" established by the Commission in orders 360, 361, 394, and 395 is unlawfully vague because the Commission failed to state specific standards for determining when a tariff filing will trigger "direct billing." The Commission describes the "direct billing procedure" in order 361, "Final Rule." This description also applies to the direct billing procedure provided in the other orders.
 
 
 66
 [T]he Commission occasionally receives filings which are not average. These filings may be extensive in scope and present factual, legal, or policy issues of such complexity that the Commission may devote an extraordinary amount of time and effort to processing them. In addition, there may not be a truly representative average due to the small number of filings in a particular area.
 
 
 67
 The standard fees established in this rule bear no reasonable relationship to the actual costs of processing those extraordinary and atypical filings. Moreover, if the costs of processing extraordinary filings are included in the costs associated with average filings, persons submitting average filings would be subsidizing those submitting the extraordinary filings. Therefore, in the case of an extraordinary filing, the Commission reserves the option of ordering a direct billing procedure at the beginning of processing the filing or at any time up to one year after receiving a complete filing. As discussed above, in the case of petition seeking advance Commission approval of rate treatment of research, development, and demonstration of expenditures, the Commission has decided to use direct billing for the entire fee category due to the unavailability of reliable data to establish an average fee.
 
 
 68
 Under the direct billing procedure, the Commission will periodically bill the entity who submitted the filing for all the direct and indirect costs incurred by the Commission in processing the filing, unless a lesser amount is determined to be fair and equitable. The staff resources devoted to processing a filing resulting in a direct billing will be separately recorded and will not be included in the work-months associated with processing average filings. This final rule also requires the Commission to credit an applicant whose filing becomes subject to direct billing with any fee paid under this fee system.
 
 
 69
 (R., Vol. II, pp. 325-27.)
 
 
 70
 We hold that the "direct billing procedure" established in orders 360, 361, 394, and 395 is in accord with the IOAA and controlling law, and the Commission's procedure is not arbitrary or capricious. We have previously held that a regulation promulgated by an administrative agency charged with the administration of an Act (the IOAA) has the force and effect of law if it is reasonably related to administrative enforcement and does not contravene statutory provisions. United States v. Barnard, 255 F.2d 583 (10th Cir.1958). Based on the scheme provided for processing and assessing fees for "average filings," we do not believe the direct billing procedure is a pretext for fees which the Commission "arbitrarily" decided not to establish.
 
 
 71
 Petitioners also raise several peripheral arguments which we find to be without merit. In summary, we hold that the Commission has the authority to recover the full costs of providing services to identifiable beneficiaries under the IOAA. We uphold the fees promulgated by the Commission as being consistent with this principle. We also hold that the Commission did not act arbitrarily, capriciously, or beyond legal authority in establishing the fees and promulgating orders 360, 361, 394, and 395 and in setting the fees at issue.
 
 
 72
 AFFIRMED.
 
 
 
 *
 The Honorable Frank G. Theis, United States District Judge for the District of Kansas, sitting by designation